UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Federated Rural Electric**
**Management Corp.,**  :  Case No. 2:19-cv-3049

    **Plaintiff,**

                      Judge Sarah D. Morrison
    v.                    Chief Magistrate Judge Elizabeth P. Deavers

**Electro Switch Corporation,** *et al.***,**  :

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Motions to Dismiss by Defendant Magnet-Schultz of America, Inc., ("Magnet-Schultz") and Defendant Electrical Power Products, Inc., ("EPP"). (ECF Nos. 36, 37.) Plaintiff filed a Memorandum in Opposition in response to each Motion (ECF Nos. 41, 42), and Magnet-Schultz and EPP each filed a Reply (ECF Nos. 43, 45). These matters are now ripe for consideration.

**I.    BACKGROUND**

This lawsuit was sparked by a malfunction and resulting fire at an electrical substation (the "Substation") in Galion, Ohio, on June 15, 2017. (Second Amended Compl. ¶¶ 11, 32, ECF No. 32.) Consolidated Cooperative ("Consolidated"), the owner of the Substation, attributes the malfunction to a sustained electrical fault (i.e., an abnormal electrical current, such as a short circuit). (*Id.* ¶¶ 32, 33.) This alleged malfunction caused significant damage to the Substation, resulting in a payout by Consolidated's insurer, Plaintiff Federated Rural Electric Management Corp. ("FREMC"), in excess of one million dollars. (*Id.* ¶ 45.)

FREMC contends that this malfunction should have been prevented by protective equipment in place at the Substation and faults the designer, seller, and manufacturers of the

1

equipment for not detecting the malfunction. In particular, one piece of equipment, a lockout relay, is supposed to work in conjunction with other equipment to de-energize the Substation when an electrical fault is detected in the power circuit. (*Id.* ¶ 17.) FREMC alleges that the lockout relay failed to resolve the fault in a timely manner, causing the resultant fire to spread. (*Id.* ¶ 44.)

Defendant Electro Switch Corp. ("Electro Switch") designed and manufactured the lockout relay, which Consolidated purchased from Defendant EPP in 2011. (*Id.* ¶¶ 13, 19.) Electro Switch also designed a component of the lockout relay known as the trip coil. (*Id.* ¶ 23.) The trip coil is the part of the lockout relay that is charged with receiving and reacting to the signals from other pieces of equipment at the Substation after a fault has been detected. (*Id.*) Defendant Magnet-Schultz manufactured the trip coil using Electro Switch's design. (*Id.* ¶¶ 25–26.)

On June 7, 2019, FREMC initiated this lawsuit in state court. (ECF No. 1-1.) Defendants removed the case to this Court, and FREMC has since amended its complaint. (ECF Nos. 1, 32.) FREMC's Second Amended Complaint consists of fifteen causes of action—manufacturing defect claims against Electro Switch and Magnet-Schultz (Counts I and VI); a design defect claim against Electro Switch (Count II); failure to warn claims against Electro Switch and Magnet-Schultz (Counts III and VII); a supplier negligence claim against EPP (Count XII); negligence claims against Electro Switch, Magnet-Schultz, EPP, and defendants not relevant here (Counts IV, V, VIII, IX, X, and XV); and two breach of implied warranty claims against EPP (Counts XIII and XIV).[1] (ECF No. 32.) The manufacturing defect, design defect, failure to

---

[1] Count XI is a respondeat superior claim against a defendant not relevant here.

warn, and supplier negligence claims are brought pursuant to the Ohio Product Liability Act ("OPLA") while the remainder are brought under the common law.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotations omitted). A complaint that falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555).

## III. ANALYSIS

Magnet-Schultz has moved to dismiss Counts VI and VII for failure to state a claim and has moved to dismiss Counts VIII and IX as being abrogated by the OPLA. (Magnet-Schultz Mot. to Dismiss, ECF No. 36.) EPP has moved to dismiss Counts XIII and XIV on the ground

3

that they are barred by the statute of limitations and has moved to dismiss Count XV as being abrogated by the OPLA. (EPP Mot. to Dismiss, ECF No. 37.)

### A.     Abrogation by the OPLA – Counts VIII, IX, and XV

The OPLA is a comprehensive product liability statutory scheme that was "intended to abrogate all common law product liability claims or causes of action." Ohio Rev. Code Ann. § 2307.71(B) (West 2020). The extent of this abrogation, however, depends on the statute's definition of what exactly constitutes a "product liability claim." It is a claim under the OPLA "that seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question . . . ." *Id.* § 2307.71(A)(13). While the OPLA prohibits a plaintiff from bringing most common law product liability claims, some common law claims remain viable in light of this definition. *See Volovetz v. Tremco Barrier Sols., Inc.*, 74 N.E.3d 743, 753 (Ohio Ct. App. 2016) ("The OPLA preemption provision extinguishes any common-law claim that, as pled, actually meets the statutory definition of a product liability claim.").

Physical damage to the product itself and nonphysical damage to other property are treated differently than the compensatory damages recoverable under a "product liability claim" under the OPLA. These damages are classified as "economic loss," which the OPLA defines as "direct, incidental, or consequential pecuniary loss . . . ." § 2307.71(A)(2). Economic loss damages encompass the change in value of a defective product or the indirect losses sustained as a result of a defective product such as the value of production time lost and resulting lost profits. *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 537 N.E.2d 624, 629 (Ohio 1989). A cause of action seeking only economic loss is not a "product liability claim" under the OPLA. *LaPuma v. Collinwood Concrete*, 661 N.E.2d 714, 716 (Ohio 1996). Economic losses are thus

recoverable through a common law cause of action. Ohio Rev. Code Ann. § 2307.72(C); *LaPuma*, 661 N.E.2d at 716; *Volovetz*, 74 N.E.3d at 753 n.4.

What all of this signals is that when a defective product causes economic loss as well as other harm (e.g., injury to a person or physical damage to other property), a plaintiff can 1) bring a claim under the OPLA for the other harm and 2) bring a common law claim for the economic loss. The question, then, is whether a plaintiff can bring both of those claims in the same action.

Magnet-Schultz and EPP argue that the answer is no, but neither points to a case where this has been specifically disallowed. (ECF No. 36, at 8; ECF No. 37, at 4.) Rather, Ohio federal courts have allowed such claims to be brought simultaneously. *See, e.g.*, *Great N. Ins. Co. v. BMW of N. Am. LLC*, 84 F. Supp. 3d 630, 649 (S.D. Ohio 2015); *Huffman v. Electrolux N. Am., Inc.*, 961 F. Supp. 2d 875, 881–82 (N.D. Ohio 2013). Neither defendant contests FREMC's ability to bring claims under the OPLA, and each concedes that FREMC could bring a common law claim for economic damages. (ECF No. 36, at 8; ECF No. 37, at 4.) But neither explains why these two types of claims are mutually exclusive.

Nor is there a good argument as to why this should be the case. It is true that the common law claim is largely duplicative of the OPLA claim. That is, the same economic loss damages that are recoverable on the common law claim remain recoverable on the OPLA claim. *See* § 2307.79(A). But that does not mean that the less-sweeping common law claim could not be brought as a hedge against a loss on the all-encompassing OPLA claim. *See Huffman*, 961 F. Supp. 2d at 881 (criticizing forcing plaintiff to choose between "relatively certain recovery of economic loss damages and the possible recovery of" both compensatory and economic loss damages). This backstop is necessary because receipt of compensatory damages is a prerequisite for receiving economic loss damages on the OPLA claim. *See* § 2307.79(A). Given all of this, a

5

plaintiff in a product liability action may bring an OPLA claim while simultaneously bringing a common law claim for economic loss damages.

Where FREMC trips up is that Ohio law prohibits recovery of economic losses through tort in most cases. Economic loss damages are generally not recoverable in tort if the economic loss stems from the breach of a contractual duty. *Corporex Dev. & Constr. Mgmt. v. Shook, Inc.*, 835 N.E.2d 701, 704 (Ohio 2005). "When a purchaser negotiates the purchase of a product, and that product fails to meet expectations, the economic loss rule and Ohio's product liability statute limit the purchaser to its contract remedies." *HDM Flugservice GmbH v. Parker Hannifin Corp.*, 332 F.3d 1025, 1031 (6th Cir. 2003). Consolidated's relationship with EPP was a contractual one, (ECF No. 32 ¶ 155), and because FREMC stands in the shoes of Consolidated, the negligent failure to warn claim against EPP in Count XV stems from a contractual relationship. Thus, because FREMC's economic loss stems from the alleged breach of a contractual duty by EPP, economic loss damages are not recoverable through a tort claim such as negligent failure to warn. The Motion to Dismiss Count XV is **GRANTED**.

The economic loss doctrine also applies in a commercial transaction where privity of contract is lacking. *HDM*, 332 F.3d at 1029–30 ("Among commercial parties, the [Uniform Commercial Code] provides a comprehensive scheme for parties to recover their economic losses."). "Permitting commercial parties to recover economic losses in tort would 'allow a purchaser to reach back up the production and distribution chain, thereby disrupting the risk allocations that have been worked out in the transactions comprising the chain.'" *Id.* at 1030 (quoting *King v. Hilton-Davis*, 855 F.2d 1047, 1054 (3d Cir. 1988)). Accordingly, FREMC cannot recover its economic loss damages through the tort claims in Counts VIII and IX either. The Motion to Dismiss Counts VIII and IX is **GRANTED**.

### B. Statute of Limitations – Counts XIII and XIV

Counts XIII and XIV are breach of implied warranty claims through which FREMC alleges that EPP sold a faulty lockout relay to Consolidated. (ECF No. 32 ¶¶ 144, 147.) These claims sound in both contract and tort, since EPP had a contractual (i.e., sales) relationship with Consolidated while FREMC now alleges that EPP's breach occurred in the context of a product liability claim. Under Ohio law, a breach of implied warranty claim can be pursued as either a contractual or a tort claim. *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 819 (S.D. Ohio 2012); *Caterpillar Fin. Servs. v. Harold Tatman & Son's, Enters.*, 50 N.E.3d 955, 962 (Ohio Ct. App. 2015); *cf. Chemtrol*, 537 N.E.2d at 631 ("[T]he implied warranty action has been described as a hybrid action, with its commencement in contract and its termination in tort." (internal quotation marks omitted)).

General principles of Ohio law illuminate the propriety of a contractual claim or a tort claim in a particular context, although, in the product liability realm, some of these principles must now be read in light of the OPLA. As explained above, the OPLA prohibits the recovery of non-economic losses through a common law tort claim. This includes breach of warranty. *See* § 2307.71(A)(13)(c) (including "[a]ny failure of [a] product to conform to any . . . warranty" in definition of "product liability claim"). Thus, since a breach of warranty tort claim does not allow for the recovery of non-economic losses, if FREMC has brought a breach of warranty tort claim, that claim is limited to economic losses.

However, as explained above, a plaintiff who has suffered only economic loss cannot sue in tort where there exists privity of contract. *Chemtrol*, 537 N.E.2d at 630–34 ("'When the promisee's injury consists merely of the loss of his bargain, no tort claim arises because the duty of the promisor to fulfill the term of the bargain arises only from the contract.'" (quoting *Battista*

7

*v. Lebanon Trotting Assoc.*, 538 F.2d 111, 117 (6th Cir. 1976))). There exists privity of contract between FREMC and EPP. (*See* ECF No. 32 ¶¶ 45, 155.)

EPP's "duty to provide a working [lockout relay] arose not under the law of negligence but rather under its contract with [Consolidated]. Accordingly, it is the law of contracts, and not the law of negligence" that creates a remedy for the economic damages incurred because the lockout relay "did not perform as expected." *See Chemtrol*, 537 N.E.2d at 631. The implied warranty claim thus must be brought as a contract claim, not a tort claim. *See id.* at 634; *Roxy Home Improvement, LLC v. Mercedes-Benz USA, LLC*, No. 1:17-CV-01817, 2018 WL 1705800, at *4–5 (N.D. Ohio Apr. 9, 2018) (finding that plaintiffs in privity with defendant could not maintain tort claims for purely economic loss); *cf. Caterpillar*, 50 N.E.3d at 963–64 ("Under the economic loss rule, plaintiffs who have only suffered an economic loss from a defective product . . . cannot recover economic losses premised on tort theories of recovery."). Accordingly, FREMC is limited to bringing a contractual implied warranty claim.

A contractual cause of action can only give rise to contractual (i.e., economic) damages. *Sun Ref. & Marketing Co. v. Crosby Valve & Gage Co.*, 627 N.E.2d 552, 554 (Ohio 1994). Such contractual losses are governed by the statute of limitations in Ohio's Uniform Commercial Code. *Id.* at 555; *see JRC Holdings, Inc. v. Samsel Servs. Co.*, 850 N.E.2d 773, 778 (Ohio Ct. App. 2006) ("[D]eciding which statute of limitations applies in any given case will depend upon the type of damages allegedly suffered by a plaintiff." (internal quotation marks omitted)). That statute of limitations is four years, beginning from the time the breach occurs. Ohio Rev. Code Ann. § 1302.98(A), (B). In the case of a breach of warranty claim, the default rule is that the breach occurs, and thus the statute of limitations begins to run, at the time of delivery. *Id.* § 1302.98(B); *In re Porsche*, 880 F. Supp. 2d at 866. A cause of action for breach of implied

8

warranty necessarily accrues at the time of delivery because an implied warranty does not contemplate any future performance. *Miles v. Raymond Corp.*, 612 F. Supp. 2d 913, 926 (N.D. Ohio 2009).

Here, because delivery occurred in 2011, the statute of limitations has run on FREMC's contractual breach of warranty claims. The Motion to Dismiss Counts XIII and XIV is **GRANTED**.

### C.     Failure to State a Claim – Counts VI and VII

Magnet-Schultz contends that FREMC's manufacturing defect and failure to warn claims are improperly pleaded because they fail to take into account the component parts doctrine. The component parts doctrine limits the liability of the manufacturer of a component comprising a completed product when a manufacturing defect is alleged with respect to the completed product. That is, the component manufacturer "is not liable for a defect in [the] completed product unless: (1) the component itself is defective or dangerous, or (2) the component manufacturer constructs or assembles the completed product or substantially participated in the design of the final completed product." *Zager v. Johnson Controls, Inc.*, 18 N.E.3d 533, 540 (Ohio Ct. App. 2014). However, a component manufacturer, as with any other manufacturer, remains responsible for the functionality of its own product, the component part. *See id.* at 541.

This doctrine is not relevant here because FREMC does not merely allege that the completed product (the lockout relay) was defective, but also alleges that the component part itself (the trip coil) was defective. (ECF No. 32 ¶¶ 35, 37–38, 91–94.) Because FREMC's manufacturing defect claim in Count VI alleges that the trip coil is itself defective, Magnet-Schultz's invocation of the component parts doctrine is not applicable.

9

Similarly, a component manufacturer has limited liability for a failure to warn claim involving the completed product of which the component is a part. *See Jacobs v. E.I. du Pont de Nemours & Co.*, 67 F.3d 1219, 1236 (6th Cir. 1995) ("Ohio law is settled that a component part manufacturer has no duty to warn end-users of the finished product of the potentially dangerous nature of its parts in that product."); *Romans v. Tex. Instruments, Inc.*, No. CA2013-04-012, 2013 WL 6094299, at *10 (Ohio Ct. App. Nov. 18, 2013). Rather, the component manufacturer's duty to warn is limited to when the "'manufacturer has knowledge of a specific use of the component and a possible danger from such use.'" *Romans*, 2013 WL 6094299, at *10 (quoting *Phan v. Presrite Corp.*, 653 N.E.2d 708, 711 (Ohio Ct. App. 1994)). As with the manufacturing defect claim, FREMC alleges a failure to warn by Magnet-Schultz in the context of the trip coil specifically. (ECF No. 32 ¶¶ 101–03.) Magnet-Schultz's arguments to the contrary ignore these specific allegations.

Magnet-Schultz's Motion to Dismiss Counts VI and VII is **DENIED**.

## IV.  CONCLUSION

For the reasons set forth above, Magnet-Schultz's Motion to Dismiss Counts VIII and IX is **GRANTED**. Its Motion to Dismiss Counts VI and VII is **DENIED**. EPP's Motion to Dismiss Counts XIII, XIV, and XV is **GRANTED**.

**IT IS SO ORDERED**.

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**